UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RODNEY CHOATE,<br><br>        Plaintiff,<br><br>        v.<br><br>WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company,<br><br>        Defendant. | Case No. _____<br><br><br><br>**COMPLAINT (ERISA)**<br><br>**CLASS ACTION** |

## I.    INTRODUCTION

    1.    Plaintiff Rodney Choate brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., on behalf of a Class of participants (and their beneficiaries) in the MRMC Employee Stock Ownership Plan (the "Plan" or "New ESOP") to require Defendant Wilmington Trust, N.A. to make good to the Plan, Plaintiff, and Class Members losses resulting from fiduciary violations, to restore to the Plan any profits that have been made by Defendant, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.  Plaintiff and the Class he seeks to represent have been cheated out of their hard-earned retirement benefits as a result of violations of ERISA's fiduciary rules by the fiduciary entrusted with their Plan.

    2.    The Plan is an employee benefit plan as defined by ERISA § 3(3), 29 U.S.C. § 1002(3), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). The Plan is an "employee stock ownership plan" within the meaning of ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6). The Plan is sponsored by Martin Resource Management Corporation.

1

## II.  JURISDICTION

3. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 29 U.S.C. § 1331.

## III.  VENUE

4. Venue lies in the District of Delaware pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District by Defendant, Defendant resides or may be found in this District, and/or breaches took place in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## IV.  PARTIES

5. Plaintiff Rodney Choate is a former employee of Martin Resource Management Corporation and/or its subsidiaries ("MRMC").  At all relevant times, Plaintiff has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

6. At all relevant times, Defendant Wilmington Trust, N.A., or its predecessor, Wilmington Trust Retirement and Institutional Services Company ("Wilmington Trust"), has been a Trustee of the Plan within the meaning of ERISA §403(a), 29 U.S.C. § 1103(a). Defendant Wilmington Trust at all relevant times has been a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.  Defendant Wilmington Trust at all relevant times has also been a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). Defendant Wilmington Trust's headquarters is in Wilmington, Delaware.

## V.  FACTS

7. MRMC is a privately-held company whose initial predecessor was incorporated in 1951 as a supplier of products and services to drilling rig contractors. Since then, MRMC has expanded its operations through acquisitions and internal expansion to provide services to the

producers and purchasers of petroleum products and by-products and other bulk liquids.

8.  As of December 31, 2012 and December 31, 2013, MRMC owned 19.2% and 19.1%, respectively, of the total outstanding limited partner units of Martin Midstream Partners, L.P. ("Martin Midstream"), a publicly traded limited partnership. Furthermore, MRMC owns and controls the general partner of Martin Midstream, and directs Martin Midstream's business operation through its ownership and control of the general partner. MRMC is an important supplier and customer of Martin Midstream, and vice versa. Under the terms of an omnibus agreement dated November 1, 2002 between MRMC and Martin Midstream, the employees of MRMC are responsible for conducting the business of Martin Midstream and operating Martin Midstream's assets.

9.  Ruben S. Martin, III has been President and Chairman of the Board of Directors of MRMC since 1981 and has served in various capacities with the company since 1974. Ruben S. Martin, III has also served as President, CEO and Director of Martin Midstream since June 2002. For many years, MRMC was jointly managed by Ruben S. Martin, III and his brother, Scott D. Martin. Beginning in or about 2006, the brothers' relationship began to deteriorate regarding the management of MRMC and an internecine power struggle over the control of MRMC arose between them. As part of the intrafamily dispute, MRMC and various Martin family members filed lawsuits against Ruben S. Martin, III or Scott D. Martin. In all, there were nearly a dozen lawsuits filed by MRMC, family members aligned with either Ruben S. Martin, III, or family members aligned with Scott D. Martin.

10.  Effective October 1,1984, MRMC adopted the Martin Employee Stock Ownership Plan ("Old ESOP"). The Old ESOP invested primarily in MRMC stock. Plaintiff participated in the Old ESOP.

11.  MRMC adopted the MRMC Employee Stock Ownership Plan ("Plan" or "New ESOP") effective January 1, 2012. The New ESOP also invested primarily in MRMC stock. Beginning in 2012, MRMC ceased all contributions to the Old ESOP, renamed the Old ESOP the "Martin Employee Stock Profit Sharing Plan," and began making contributions to the New

ESOP.

12.  In or about October 2012, Ruben S. Martin, III, Scott D. Martin, and MRMC agreed to the settlement of the longstanding litigation among them.  As part of the settlement, MRMC purchased all MRMC shares owned by Scott D. Martin and certain other parties involved in the litigation.

13.  As a result of the settlement of the Martin lawsuits, MRMC established the New ESOP and used the New ESOP to directly or indirectly purchase additional MRMC stock from entities related to the Martin family (the "2012 and 2013 ESOP Transactions").

14.  In 2012, The Plan purchased approximately 738 shares of MRMC common stock using proceeds from a cash contribution by MRMC from a party in interest, and approximately 3,066.5 shares of MRMC preferred stock from a party in interest using the proceeds of a loan from MRMC.

15.  In December 2012, as the result of an MRMC stock split whereby each issued and outstanding share was converted into 25 shares, the Plan's common 738 common shares became 18,450 common shares, and the Plan's 3,066.5 preferred shares became 76,662.5 preferred shares.

16.   In 2013, the Plan's 76,662.5 shares of preferred stock were converted into 76,662.5 shares of common stock.

17.  In 2013, the Plan purchased approximately 32,194 shares of MRMC common stock from a party in interest using cash, dividends and the proceeds from a loan from the Company.  The Plan then purchased an additional 56,855 89,049.5 shares of MRMC common stock from parties in interest using cash and the proceeds from subordinated notes.  Upon information and belief, the selling shareholders in the 2013 transactions included The Ruben S. Martin III Dynasty Trust and CNRT LLC

18.  Ruben S. Martin is the registered agent for CNRT LLC.  The registered address for CNRT LLC is the address for MRMC's corporate headquarters in Kilgore, Texas.

19.  Upon completion of the 2012 and 2013 ESOP Transactions, the Old ESOP and

the New ESOP owned 100% of MRMC. As of the of 2013, the New ESOP owned approximately 81.4% of the outstanding common stock of MRMC.

20. Ruben S. Martin, III remained President and Chairman of the Board of Directors of MRMC following the 2012 and 2013 ESOP Transactions. In addition, Robert D. Bondurant served as Executive Vice President, Chief Financial Officer and Director, and Randall L. Tauscher served as Executive Vice President, Chief Operating Officer and Director both before and after the 2012 and 2013 ESOP Transactions.

21. CSG Partners, LLC ("CSG Partners"), a New York investment bank, advised MRMC in the 2012 and 2013 ESOP Transactions.

22. Defendant Wilmington Trust represented the Plan as Trustee in the 2012 and 2013 ESOP Transactions.

23. Upon information and belief, CSG Partners recommended to MRMC that MRMC retain Defendant Wilmington Trust to represent the Plan as Trustee.

24. Upon information and belief, the appraisals relied upon by Defendant Wilmington Trust in the 2012 and 2013 ESOP Transactions did not adequately account for the debt burden taken on by MRMC in the Transactions.

25. Upon information and belief, the appraisals relied upon by Defendant Wilmington Trust in the 2012 and 2013 ESOP Transactions did not adequately account for the cyclical nature of the petroleum industry.

26. Upon information and belief, the appraisals relied upon by Defendant Wilmington Trust in the 2012 and 2013 ESOP Transactions did not adequately account for the costs imposed on MRMC by the settlement with Scott D. Martin and other family members.

27. Upon information and belief, the appraisals relied upon by Defendant Wilmington Trust in the 2012 and 2013 ESOP Transactions included a control premium even though Ruben S. Martin, III retained control of MRMC following the Transactions.

28. Upon information and belief, Defendant Wilmington Trust had divided loyalties in the 2012 and 2013 ESOP Transactions because Wilmington Trust hoped to receive additional

referrals from CSG Partners. In addition, Defendant Wilmington Trust hoped that MRMC would retain it to serve as the Plan's ongoing Trustee after the Transactions and thereby receive annual fees for trustee services.

29. The Plan paid $375,478,400 for the MRMC stock purchased from parties in interest in the 2012 and 2013 ESOP Transactions. As of December 31, 2013, however, the Plan reported that its MRMC stock was only worth $189,852.213. Thus, the Plan reported that its stock had lost approximately half its value a short time after the Plan completed its transactions with parties in interest.

30. The Plan's MRMC stock has continued to decline in value. As of December 31, 2015, the Plan reported that its MRMC stock was only worth $151,210,743.

## VI.  CLASS ACTION ALLEGATIONS

31. Plaintiff bring his Claims for Relief for violations of ERISA §§ 502(a) and 502(c), 29 U.S.C. §§ 1132(a) and 1132(c), as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were participants in the ESOP and the beneficiaries of such participants ("Class"). Excluded from the Class are Ruben S. Martin, III, and his family, and legal representatives, successors, heirs, and assigns of any such excluded persons.

32. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that there were over 2,000 participants in the ESOP during the class period and approximately an equal number of beneficiaries of such participants. Although the exact number and identities of Class Members are unknown to Plaintiff at this time, this information is easily ascertainable from the Defendant and the Plan through discovery of their records.

33. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    A) Whether Defendant breached its fiduciary duty to the Class to undertake an appropriate and independent investigation of the fair market value of MRMC stock in 2012 and 2013;

6

    B)     Whether the Plan paid more than fair market value for MRMC shares in the 2012 and 2013 ESOP transactions;

    C) Whether the Plan paid more than fair market value for MRMC shares in the 2012 and 2013 ESOP transactions;

    D) Whether Defendant caused the Plan to engage in a prohibited transaction in the 2012 and 2013 ESOP transactions;

    E) The losses suffered by the Plan and Class members as a result of Defendant's ERISA violations; and

    F)     The appropriate relief for Defendant's violations of ERISA.

34.     Plaintiff's claims are typical of those of the Class because his claims arise from the same events, practices and/or course of conduct.

35.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

36.     Class certification of Plaintiff's First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class Members, as a practical matter, would be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impart or impede their ability to protect their interests.

37.     In addition, class certification of Plaintiff's First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

38.     The names and addresses of the Class Members are available from Defendant and

the Plan. Notice will be provided to all members of the Class as required by Rule 23.

## FIRST CLAIM FOR RELIEF
**[Breach of Fiduciary Duty Under ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3)]**

39.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

40.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the ESOP, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

41.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

42.     The duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the participant receives adequate consideration for the assets in his or her account in the Plan. Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market, means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulation

43.     ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such

other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

44. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

45. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

46. Defendant was required to undertake an appropriate and independent investigation of the fair market value of MRMC stock in 2012 and 2013 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed the fact that the valuations used for the 2012 and 2013 transactions did not reflect the fair market value of the MRMC stock purchased by the ESOP.

47. Defendant breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

48. Defendant's acts and omissions caused millions of dollars of losses to the Plan and Class members' accounts in an amount to be proven more specifically at trial.

### SECOND CLAIM FOR RELIEF
### [Engaging in Prohibited Transaction Forbidden by ERISA § 406, 29 U.S.C. § 1106(a)(1)(B)]

49. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

50. ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

51. ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration

9

for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

52. ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

53. Defendant engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the 2012 and 2013 ESOP transactions, and the prohibited transactions did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). Defendant failed to ensure that the ESOP paid no more than fair market value for the MRMC stock purchased from parties in interest in the 2012 and 2013 ESOP transactions.

54. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

55. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

56. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

57. Defendant has caused millions of dollars of losses to the ESOP and Class members' accounts by the prohibited transactions in an amount to be proven more specifically at

trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

**As to the First Claim for Relief:**

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel;

B. Declare that Defendant has breached its fiduciary duties to the Plaintiff Class and/or knowingly participated in breaches of fiduciary duty;

C. Enjoin Defendant from further violations of its fiduciary responsibilities, obligations and duties;

D. Issue a preliminary and permanent injunction removing Defendant as fiduciary and Trustee of the Plan and/or barring Defendant from serving as fiduciary or Trustee of the Plan or other pension plans in the future, and appointing a new independent fiduciary as Trustee of the Plan;

E. Order that Defendant makes good to the Plan and/or to any successor trust(s) the losses resulting from its breaches and restoring any profits it has made through use of assets of the Plan;

F. Order that Defendant provides other appropriate equitable relief to the Plan, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

G. Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan;

I. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

J. Order Defendant to pay prejudgment interest; and

K. Award such other and further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

A.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel;

B.      Declare that Defendant has breached its fiduciary duties to the Plaintiff Class and/or knowingly participated in breaches of fiduciary duty;

C.      Declare that Defendant engaged in a prohibited transaction in violation of ERISA § 406(a)-(b), 29 U.S.C. § 1106(a)-(b), by causing the Plan to pay more than adequate consideration in the 2012 and 2013 ESOP transactions;

D.      Enjoin Defendant from further violations of its fiduciary responsibilities, obligations and duties;

E.      Issue a preliminary and permanent injunction removing Defendant as fiduciary and Trustee of the Plan and/or barring Defendant from serving as fiduciary or Trustee of the Plan or other pension plans in the future, and appointing a new independent fiduciary as Trustee of the Plan;

F.      Order that Defendant makes good to the Plan and/or to any successor trust(s) the losses resulting from its breaches and restoring any profits it has made through use of assets of the Plan;

G.      Order that Defendant provides other appropriate equitable relief to the Plan, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

H.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan;

J.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.      Order Defendant to pay prejudgment interest; and

L.      Award such other and further relief as the Court deems equitable and just.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated:   April 28, 2017 | THE BIFFERATO FIRM, P.A. |

*/s/ Ian Connor Bifferato*
Ian Connor Bifferato, Esq. (#3273)
Kimberly L. Gattuso, Esq. (#3733)
1007 N. Orange Street, 4th Floor
The Mill
Wilmington, DE 19801
Telephone: (302) 225-7600
cbifferato@tbf.legal
kgattuso@tbf.legal

and

Daniel Feinberg (*pro hac vice* to be filed)
Todd Jackson (*pro hac vice* to be filed)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
383 4th St., Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
dan@feinbergjackson.com
todd@feinbergjackson.com

*Attorneys for Plaintiff*